JOHN WAGNER, RESPONDENT, v. THE LONG ISLAND RAILROAD COMPANY, APPELLANT.

*Surface water — right of owner of land to arrest the flow of — Water-course — what is.*

The plaintiff is the owner of land, lying within the angle formed by the intersection of a highway with an embankment, constructed on the lands of the defendant, upon which its tracks are laid. Prior to the construction of the embankment, large quantities of water flowed, during the winter season and in very rainy weather, along the highway, and passed the land of the plaintiff without collecting there. The embankment prevented this water flowing off the land of the plaintiff, and caused it to collect thereon. In this action, brought by the plaintiff to recover damages for the injuries occasioned thereby, *held,* that he could not recover.

No action will lie against a party for so using or changing the surface of his own land, as to dam up and obstruct the flow of surface water which has been accustomed to flow over and across the land of his neighbor.

What is necessary to constitute a water-course considered.

APPEAL from a judgment in favor of the plaintiff, entered upon the verdict of a jury, and from an order denying a motion for a new trial, made upon the judge's minutes.

This action is brought by the plaintiff, as the owner and occupier of a tract of land and house thereon in Suffolk county, to recover damages to the premises and property of plaintiff from an overflow

* Code, § 351.

HUN—VOL. II.        80

of water thereon, occasioned by an embankment constructed upon the land of the defendant. The plaintiff and defendant are adjoining owners, the land of defendant being used for a railroad track, which is crossed by a highway, also adjoining the plaintiff's land. Prior to the construction of defendant's railroad, during the winter season, large quantities of water flowed from some distance above the plaintiff's premises, along and parallel with the highway, and passed plaintiff's premises without collecting there. Defendant's railroad was constructed at this point in 1869 and 1870, and where it adjoins plaintiff's land, an embankment was raised, upon which the track was laid, which embankment formed an angle with the highway, which, at certain seasons of the year, prevented the water from flowing off plaintiff's land, and caused it to collect thereon. The complaint alleges that defendant was negligent and unskillful in constructing the railroad embankment and raising the highway, and should have provided pipes or other suitable means to carry off surplus water which might at any time accumulate between the embankment and raised highway; and that, by reason of this negligent and unskillful construction, large quantities of water accumulated between the said railroad embankment and raised highway, on, and overflowed plaintiff's land, and ran into his house on the days named, and caused the damage complained of.

The answer avers that the railroad at the place is properly and skillfully constructed with reference to the nature of the ground, etc.; and that there is no obstruction, by the said railroad or highway crossing, of any natural stream of water; and that the water alleged to be obstructed, was not any other than surface water, at and after extremely wet and rainy weather, and during winter and spring freshets. The defendant moved for a nonsuit, on the ground that plaintiff had failed to prove the obstruction of a natural stream of water, and that defendant was not required to have a passage for surface water through its lands. The court denied the motion, and defendant excepted. After the charge of the court, to which various exceptions were taken, a verdict was found for plaintiff.

*R. S. Green* and *Wm. Wickham,* for the appellant, cited, as to the right of the defendant to construct the embankment, *Goodale* v. *Tuttle* (29 N. Y., 466); *Waffle* v. *N. Y. C. R. R. Co.* (58 Barb.,

413); *Luther* v. *Winnisimmet Co.* (9 Cush., 171); *Ashley* v. *Wolcott* (11 id., 192).

*George W. Whitaker*, for the respondent.

TALCOTT, J. :

This is an action to recover damages against the defendant for constructing the embankment for its road along and across the adjoining land of the plaintiff, whereby the usual flow of the water across and off from the plaintiff's premises, was damned up and obstructed, and caused to accumulate, whereby the plaintiff sustained damage.   It seems to be perfectly well settled, that no action will lie against a party for so using or changing the surface of his own land, as to dam up and obstruct the flow of surface water, which had been accustomed to flow over and across the land of his neighbor.   The question involved in the case, is precisely the same in principle as that which came before the Supreme Court of Massachusetts, in *Parks* v. *The City of Newburyport.* [*] In that case, the judge on the trial had instructed the jury, that if, for twenty years, the water accumulating on the land in the rear of the lots in question, had been accustomed to find its outlet over the land of the defendants, and the same had been obstructed by the acts of the defendants, in such a way as to turn it from their own land across land of the plaintiff, and occasion substantial injury to the property of the plaintiff, without his fault, or want of care on his part, then the defendants would be liable.   The plaintiff having recovered under this instruction, the verdict was set aside upon the following opinion by the court: " The declaration is for obstructing a water-course, and the instruction allowed the jury to find for the plaintiff, though there was no water-course.   No action will lie for the interruption of mere surface drainage." [†]   These principles, in the abstract, were conceded by the learned justice who tried the cause ; but we think the defendant was deprived of the benefit of them by the refusal to nonsuit, and by certain instructions which were given to the jury.   It was left to the jury

[*] 10 Gray, 28.

[†] See, also, Dickinson v. Worcester,  7 Allen, 19; Swett v. Cutts, 50 N. H., 439; Goodale v. Tuttle, 29 N. Y., 466.

to find, upon the evidence, whether there existed a water-course which the defendant had obstructed. We think this was erroneous in the case, both upon the pleadings and the evidence. First, it is to be observed, that the plaintiff did not, in his complaint, claim that there had existed over this land any stream or water-course which the defendant had obstructed. He says that "prior to the construction of such embankment, during the winter season, large quantities of water flowed some distance above the plaintiff's premises, along and parallel with the aforesaid highway, and passed the plaintiff's premises without collecting there." This is a statement which seems plainly to mean that such had been the natural flow of the surface water; and such, we think, the evidence on the part of the plaintiff plainly showed it to be in fact. The plaintiff's complaint was plainly founded on the theory that the defendant could not lawfully make any embankment on its own land, which would so obstruct the natural flow of surface water during thaws and freshets as to cause it to accumulate on the land of the plaintiff, but was bound, by means of sufficient culverts, or otherwise, to provide some means whereby this water should be disposed of. And the gravamen of the plaintiff's action was the alleged negligence of the defendant in constructing its embankment without providing sufficient pipes and culverts to discharge the surface water. A water-course, according to the definitions of the authorities, "consists of bed, banks and water; yet, the water need not flow continually; and there are many water-courses which are sometimes dry. There is, however, a distinction to be taken, in law, between a regular, flowing stream of water, which, at certain seasons, is dried up, and those occasional bursts of water, which, in times of freshet or melting of ice and snow, descend from the hills and inundate the country. To maintain the right to a water-course or brook, it must be made to appear that the water usually flows in a certain direction and by a regular channel, with banks or sides. It need not be shown to flow continually, as stated above; and it may at times be dry, but it must have a well defined and substantial existence." * Water flowing through a hollow or ravine, only in times of rain or melting of snow, is not, in contemplation of law, a water-course. †

* Angell on Water-Courses, § 4.          † Id., § 4, *d.*

The plaintiff, as we think, not only failed to allege, but also, to give any evidence tending to show the existence of any watercourse which the defendants had obstructed ; and the motion for a nonsuit should have been granted. We think, also, that portions of the charge excepted to were calculated to mislead the jury. In one portion of the charge the court, after having submitted to the jury the question as to whether there was a living, running stream obstructed by the embankment, said : " You are to say whether this was practically a running stream, over which the railroad company were bound to build a culvert, so as to furnish drainage for it. *In other words, whether they were justified in building a tight dam across this valley, no matter whether the plaintiff's property was submerged or not.*" It seems to us that this charge was calculated to withdraw the attention of the jury from the true question at issue, if any there were, and to substitute in place of it a question to be determined by them, as to whether the defendant ought not, as a mere matter of fairness, and without any question of legal obligation, under all the circumstances, to have constructed culverts in their embankment, to facilitate the drainage of the plaintiff's land.

The judgment is reversed, a new trial ordered, costs to abide the event.

Present — TAPPEN and TALCOTT, JJ.

Judgment reversed and a new trial ordered, costs to abide event.